# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FREDDIE GARLAND,

     Plaintiff,

                                      Case No. 17-12246

v.                                 HON. DENISE PAGE HOOD

WELLS FARGO HOME
MORTGAGE INC., U.S.
BANK, N.A., and ORLANS PC,

     Defendants.

_____/


## ORDER GRANTING ORLAN PC's MOTION TO DISMISS [#4] and WELLS FARGO MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [#5]

## I.    BACKGROUND

### A. Procedural Background

On June 19, 2017, Plaintiff Freddie Garland ("Garland") commenced this action in the Circuit Court of Wayne County, Michigan against Defendants U.S. Bank, N.A. ("U.S. Bank"), Wells Fargo Home Mortgage Inc. ("Wells Fargo") and Orlans PC ("Orlans") (collectively "Defendants"), alleging that Defendants U.S. Bank and Wells Fargo fraudulently claims an interest in his property (Count 1) and wrongfully initiated foreclosure proceedings against him (Count 2), requesting that the Court issue a stay on the non-judicial foreclosure of his home. Garland also

alleges that Defendant Orlans Violated the Fair Debt Collection Practices Act (Count 3). (Doc # 1-1, Pg ID 4-7) Garland also makes several other references to statutes and legal theories that do not form the basis of a cognizable claim throughout the complaint.

On July 11, 2017, Defendant Orlans filed a Notice of Removal in this Court. (Doc # 1) This matter is currently before the Court on Defendant Orlans' Motion to Dismiss (Doc # 4) (pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6)) and Defendant Wells Fargo's Motion to Dismiss or, alternatively, for Summary Judgment. (Doc # 5)

## B. Factual Background

Garland owns certain real property located at 15307 Stout, Detroit, Michigan 48223 (the "Property"). (Doc # 5) In 2004, Plaintiff obtained an $89,000 loan from BNC Mortgage Inc. (the "Loan") (*Id.*) Plaintiff and his then wife, Linda Garland, gave a Mortgage against the Property as security for repayment of the Loan. (*Id.*) The Loan and Mortgage were assigned to U.S. Bank in its capacity as trustee of a securitized trust. (*Id.*) Wells Fargo services the Loan for the bank.

Garland was incarcerated in the Milan Federal Penitentiary from June 8, 2008 until his release on February 17, 2017. (Doc # 7; Pg ID 5) Sometime in July 2008, Garland also indicated that his then wife would "take care of the mortgage account." (Doc # 5-6) Garland kept up communication with Wells Fargo while

incarcerated. (*See* Doc # 5-8; Doc # 5-9; Doc # 5-10)  On February 3, 2011, Garland named his the wife as his general "power of attorney" to conduct his affairs during his incarceration.  The change was acknowledged by Wells Fargo on March 15, 2011. (Doc # 5-12)

In June 2011, Plaintiff requested assistance from the Wayne County Mortgage Foreclosure Prevention Program. (Doc # 5-13)  Wells Fargo acknowledged Garland's request for third-party assistance by letter on June 20, 2011, however, Garland did not default on the Loan. (Doc # 5-14)

In June 2013, Garland changed his power of attorney to Alfreda Garland, which was acknowledged by Wells Fargo. (Doc # 5-15; Doc # 5-16)  In October 2014, at a time when his mortgage obligation was past due, Garland sought mortgage assistance from Wells Fargo, but he did not default on the Loan. (Doc # 5-17; Doc # 5-18; Doc # 5-19)

Garland and his wife Linda Garland were divorced on September 22, 2015. (Doc # 7, Pg ID 12)  Linda remained as Garland's power of attorney under the terms of the Separation Agreement (the "Agreement").  (*Id.*, Pg ID 13)  The Agreement stated that Linda Garland would relinquish power of attorney no later than seven days after Garland's release from prison. (*Id.*)  The agreement also specified that Linda and Plaintiff would "hold the real property located at 15307 Stout, Detroit, MI 48223 . . . as joint tenants with rights of survivorship until

Defendant husband is released from incarceration." (*Id.*) Linda Garland was to pay the monthly mortgage payments on Plaintiff Garland's behalf while he was incarcerated. (*Id.*) The Agreement specified that Plaintiff was to be awarded sole ownership of the Property upon his release, and hold his ex-wife free from all expenses associated with the Property. (*Id.*) After his release from prison, Garland became the sole owner of the Property.

Garland was past due on his monthly obligation on the Loan once again in February 2017. (Doc # 5-20; Doc # 5-21) On March 18, 2017, on behalf of Wells Fargo, Orlans mailed Garland correspondence (the "Letter") that detailed Garland's default on the Loan obligations and explained that the matter was referred to Orlans for further action. (Doc # 4, Pg ID 10) The Letter directed Garland's attention to the "Notice of Debt Pursuant to 15 U.S.C. § 1692" and relevant portions indicated:

> You may have the rights to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and cost and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (248) 502-1400.

The attached Notice of Debt provided:

1. The amount of debt as of May 16, 2017 is $76,575.84.

2. Because of interest fees, and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount state above. Please contact Wells Fargo Home

Mortgage Inc. or Orlans PC at (248) 502-1400 to obtain an updated payoff amount.

3. The name of the creditor to whom the debt is owed is U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle Bank National Association, as Trustee for Structure Asset Securities Corporation, Amortizing Residential Collateral Trust, Mortgage Pass-Through Certificates, Series 2004-1.

4. Unless you, within thirty days after receipt of t[sic] notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Orlans PC.

5. If you notify Orlans PC in writing with the thirty date period that the debt, or any portion thereof is disputed, Orlans PC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to you by Orlans PC; and

6. Upon your written request within the thirty day period, Orlans PC will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.* at 10-11.

Wells Fargo sent Garland a letter to notify him that he had to pay $2,318.50 by March 22, 2017 to avoid the possibility of acceleration. *Id.* By May 2017, Wells Fargo and Garland had not reached an agreement concerning mortgage assistance. (Doc # 5-22)   Wells Fargo referred Garland's Mortgage Loan to Defendant Orlans to initiate foreclosure proceedings.  (Doc # 5-23)  On May 19, 2017, Wells Fargo sent a letter to Garland to discuss an offer for a Short Sale of the Property, with a deadline of June 2, 2017.  (Doc # 5-24)  The foreclosure notice set

a sale date for June 22, 2017.  (Doc # 5-25)  At some point, Orlans contacted the Detroit Legal News to publish the foreclosure sale by advertisement.  (Doc # 4, PgId 11)

## II.    ANALYSIS

### A. Standards of Review

#### 1. *Rule 12(b)(1)*

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (*citing United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  In the case of a facial attack, and the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. *Id.*

In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.*   Plaintiff bears the burden of establishing that subject matter

jurisdiction exists.  *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

## 2. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (*quoting Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted);

*see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 3. Motion for Summary Judgment

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's

case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### 4. Pro Se Litigants

Federal courts hold pro se complaints to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, *pro se* litigants are not excused from failing to follow basic procedural requirements. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Brock v. Hendershott*, 840

F.2d 339, 343 (6th Cir. 1988). A *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 (1984).

## A. Orlan's Motion to Dismiss

Orlans moves to have Garland's FDCPA claim dismissed with prejudice for lack of standing pursuant to Rule 12(b)(1) because Garland has not alleged any injury-in-fact related to the purported FDCPA violation. Orlans makes a facial challenge to the complaint, arguing that Garland has failed to allege that he has suffered actual damages, and lacks standing, relying on the recent Supreme Court decision *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016). Orlans' standing argument fails.

Standing is a "jurisdictional" matter, and a lack of standing deprives a court of subject matter jurisdiction. *Ward v. Alternative Heather Delivery Systems, Inc.*, 261 F.3d 624, 626 (6th Cir. 2001). Article III limits federal courts to hearing "actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). Article III mandates that parties have standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to satisfy the requirements of Article III standing, a Plaintiff must have suffered (1) an injury-in-fact. *Id.* The injury must be "concrete and particularized" and "actual or imminent." *Id.* There must also be (2) a "casual connection" (causation) between the injury and the conduct giving

rise to the claim. *Id.* Finally, the court must be able to provide (3) redress for the injury (redressability). *Id.*

In *Spokeo*, the Supreme Court addressed whether particular procedural violations of the Fair Credit Reporting Act (FCRA) could satisfy the injury-in-fact requirement of Article III standing. *Spokeo*, 136 S. Ct at 1550 (holding that particular procedural violations alleged did not meet the concreteness standard to satisfy the injury-in-fact requirement). The Court did reiterate that the plaintiff's injury must "actually exist." *Id.* at 1549. The Court, however, also noted that an injury may not be tangible and "Congress may 'elevat[e] the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.'" *Id.* at 1549. The "violation of a procedural right granted by statute can be sufficient in some circumstance to constitute injury in fact." *Id.*

The Sixth Circuit has held that an alleged violation of the FDCPA confers standing. *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 448-49 (6th Cir. 2014) ("[FDCPA] is a strict liability statute: A plaintiff does not need to prove…actual damages."); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) ("The statute imposes strict liability for violations."). Courts have consistently held that proof of actual damages is not required to recover statutory damages under that FDCPA. *See*, *e.g.*, *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014) (holding that the

plaintiff has both Article III standing and a statutory cause of action under the FDCPA). Other courts that have ruled on the issue following *Spokeo* have agreed that an alleged violation of the FDCPA confers standing. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990, 994 (11th Cir. 2016) ("[T]hrough the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA–and a new injury–not receiving such disclosure."); *but cf. Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) ("[T]hough *Spokeo* allows for a bare procedural violation to create a concrete harm, the procedural violation alleged here—a violation of a state law procedure not required under FDCPA—is not the type contemplated by *Spokeo*…. The goal of the FDCPA is to eliminate abusive debt collection practices.")

Garland has alleged that Orlans violated the FDCPA by demanding an undocumented and unverified sum of money from him that was different from and greater than the sum he owed. (Doc # 1-1, Pg ID 7) The alleged harm is of the kind the FDCPA is intended to prevent. This Court follows the law of the Sixth Circuit, and other circuit courts, and finds that Garland has standing to bring his claim for the alleged statutory violation of the FDCPA. Orlans' Motion to Dismiss Garland's claim pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

Orlans also moves to have Garland's claims dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can granted. Garland alleges

that Orlans made false and misleading representations, in violation of 15 U.S.C. § 1692e, in connection with the collection of Garland's alleged debt on the Loan because the amount owed on the Letter Orlans sent to Garland was undocumented, unverified, and much higher than what Garland could possibly owe under any lawful theory. Defendant argues that Garland's claim is erroneous.

The FDCPA, 15 U.S.C. § 1601 *et seq.*, governs debt collectors' actions. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and to promote actions to protect consumers against debt collection abuses. *Id.* at § 1692(e); *Grden v. Leikin Inger & Winters, PC*, 643 F.3d 169, 172 (6th Cir. 2011). Violators of the FDCPA are subject to actual damages, statutory damages and attorneys' fees. 15 U.S.C. § 1692k.

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, and may not falsely represent "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692g of the FDCPA provides that notice must effectively convey "th[e] amount of the debt. 15 U.S.C. § 1692g(a)(1). A court uses the perspective of the "least sophisticated consumer" to determine whether notice was effectively conveyed under the FDCPA. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504 (6th Cir. 2007). The standard assumes that a notice is read "in its

entirety, carefully and with some elementary level of understanding." *Id.* at 510.

Section 1692g further states:

> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector.

*Id.* at § 1692g(b).

Neither party disputes that (1) Garland is a consumer as defined by the FDCPA, (2) the Loan was the result of a personal transaction, or (3) whether Orlans is a debt collector within the meaning established under the FDCPA. *See Wallace v. Washing Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (listing the elements required to establish FDCPA claim under § 1692e). The only issue before the Court is whether Garland has sufficiently alleged that Orlans violated § 1692e by stating an incorrect amount owed in the March 18, 2017 debt collection Letter sent to Garland. The Sixth Circuit has not decided the issue of whether a debt collector violates § 1692e by stating an imprecise amount on a debt that can vary day to day.

The Seventh Circuit case *Miller v. McCalla, et al*, 214 F.3d 872 (7th Cir. 2000), is instructive. In *Miller*, the plaintiff argued that the defendants violated the FDCPA because they sent a letter to plaintiff which purported to state the "amount of debt" but only included the unpaid principal balance owed, without unpaid

interest, late fees, or any other additional charges applied to the debt. *Id.* at 875. The *Miller* court determined that the unpaid principal balance was not the debt owed, and acknowledged the difficulty in correctly stating the amount owed on debt that is likely to change daily. *Id.* Judge Richard Posner of the Court of Appeals for the Seventh Circuit explained: "The [imprecise] statement does not comply with the Act. . . . [But] [w]hat they certainly could do was to state the total amount due-interest and other charges as well as principal-on the date the [] letter was sent." *Id.* at 875. The *Miller* court held that the following statement satisfies a debt collector's duty to state the amount of debt in a case where the amount can vary from day to day:

> As of the date of this letter, you owe $___ [the exact number due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].

*Id.* at 876.

In the present case, there are two factors to note. First, this Court considers the language Orlans used in the Letter sent to Garland. Orlans stated, "Because of interest fees, and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount state above. *Please contact Wells Fargo Home Mortgage Inc. or Orlans PC at (248) 502-1400 to*

*obtain an updated payoff amount*." (Doc # 4, Pg Id 10)  This language is clearly different from the language authorized by the Seventh Circuit.  The *Miller* court added, however, "we do not hold that a debt collector *must* use this form of words to avoid violating the statute.  But if he does, and does not add other [confusing] words . . . he will as a matter of law have discharged his duty to state clearly the amount due."  *Miller*, 214 F.3d at 876.  While Orlans did not use the specific language validated by the Seventh Circuit, the language used was substantially the same.  Second, Garland never attempted to verify the amount he owed on the Loan before filing this action.  Garland has not provided any information regarding his debt obligation on the Loan.

Taking the allegations in Garland's complaint as true, it is not clear that the amount Orlans indicated to Garland was incorrect, or that Garland sought to correct any mistakes.  Garland presents only a conclusory statement that Orlans violated the FDCPA because the amount Orlans stated was significantly higher than what Garland expected.  Garland did not provide any further details regarding the actual amount owed or his expectations regarding the debt on the Loan.  Orlans also indicated that the amount stated was the current amount due on March 18, 2017, that the actual amount owed might be different from what was stated in the Letter, and that Garland could inquire about the amount owed.  Garland has not

presented any other facts or presented other evidence regarding the debt on the Loan.

This Court grants Orlans' Motion and dismisses Garland's claim FDCPA claim (Count 3) against Orlans without prejudice.

## B. Wells Fargo's Motion to Dismiss

Wells Fargo moves to have Garland's claims against them dismissed for failure to state a claim upon which relief can be granted.  Plaintiff makes various claims against Wells Fargo and request that this Court stay the non-judicial foreclosure sale on his home.

### 1. Wrongful Foreclosure Claim

Garland alleges that Wells Fargo wrongfully seeks to foreclose on his property.  (Doc # 1-1, Pg ID 4)  Wells Fargo argues that the facts plainly show that Garland defaulted on the Loan, and that foreclosure is lawful under the laws of Michigan.  (Doc # 5, Pg ID 10)

 Michigan law provides that:

(1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
   (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
   (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part.

> (c) The mortgage containing the power of sale has been property recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

*See*, M.C.L. 600.3204(1).

The following facts are uncontested: (1) Garland defaulted on his obligations under the Loan (Doc # 5-21); (2) there is no action or proceeding instituted to recover the debt secured by the Mortgage; (3) the Mortgage contains a power of sale (Doc # 5-5, Pg ID 15 at ¶ 22), and that U.S. Bank, the foreclosing party, was an owner of an interest in the indebtedness secured by the mortgage. (Doc # 5, Pg ID 13-14) The requirements of M.C.L. 600.3204(1) are met.

Subsection (3) of §3204 also states: "If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." There was also a record chain of title at the time of the foreclosure. (Doc # 5, Pg ID 14)

Garland does not dispute the facts above. Garland does, however, argue that neither U.S. Bank nor Wells Fargo is the "owner or holder of any purported note to which [Garland] may or may not be bound to make payment." (Doc # 1-1; Pg ID 5) Under M.C.L. 600.3204(1)(d), U.S. Bank as the Mortgage assignee, can complete a foreclosure by advertisement because it is the owner of an interest in

the "indebtedness secured by the mortgage." *See Residential Funding Co. v. Saurman*, 490 Mich. 909, 910 (2011) ("[T]he Legislature's use of the phrase 'interest in the indebtedness' to denote a category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record . . . along with parties who 'own[ ] the indebtedness' and parties who act as "the servicing agent of the mortgage.")

Garland also argues that foreclosure would be improper based on a number of theories under the contract.

Garland argues that ¶ 6 of the Mortgage imposes a duty on Defendants to investigate and document the changes in his economic standing following his release from prison, and the failure to do so prohibits foreclosure on the Property. (Doc # 7, Pg ID 6) Garland's argument fails for two reasons. First, ¶ 6 of the Mortgage deals with borrower occupancy of the home. (Doc # 5-5, Pg ID 9) The extenuating circumstances clause that Garland relies on does not address remedies for financial hardship nor does it impose any additional duty on Wells Fargo to investigate borrower financial hardship. Second, nothing in ¶ 6 affects the requirements to initiate foreclosure by advertisement established in M.C.L. 600.3204.

Garland argues that he has a right to loan modification due to his financial hardship. (Doc # 7, Pg ID 6) Garland has not plead facts sufficient to establish

that such a duty existed. Garland also alleges that the attempted foreclosure of his home is a violation of the federal Home Affordable Modification Program (HAMP), but there is no private right of action under HAMP.

Garland further alleges that Wells Fargo was negligent in initiating foreclosure proceedings against him because Wells Fargo owed him a duty to help ascertain a solution to extenuating circumstances. Garland's negligence claim fails because of the well-established Michigan rule that parties are precluded from pursuing a tort remedy when the parties' relationship is governed by the terms of a contract. *See, e.g.*, *Sherman v. Sea Ray Boats, Inc.*, 251 Mich. App. 41, 52 (2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1134 (6th Cir. 1995) ("Michigan law 'is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract.' ").

Under the section of Garland's complaint titled "SECOND CAUSE OF ACTION," Garland requests that this Court set "aside or vacate the alleged promissory note or mortgage" based on his belief that he "may or may not" have signed the promissory note on the mortgage. (Doc # 1-1, Pg ID 5) Several documents and years of correspondence indicate that Garland did sign the note,

and intended to be bound by the terms of the Mortgage and Loan.  Garland signed and initialed the original Mortgage document in several places.  (Doc # 5-5)  Garland signed the Adjustable Rate Note.  (Doc # 5-3)  Garland communicated with Wells Fargo, in its capacity as servicer of the Loan, on several occasions to inquire about payments and to establish power of attorney over him during his term of imprisonment. (*see* Doc # 5-7; Doc # 5-15; Doc # 5-21; Doc # 5-24)  Garland has not presented facts or offered evidence that U.S. Bank did not own the Loan or that he was not aware of his commitments under the terms of the Loan.

This Court dismisses Garland's wrongful foreclosure claim with prejudice (Count 2).

### 1. Garland's Other Claims

This Court dismisses Garland's claim for fraudulent foreclosure (Count 1) because Garland has not provided sufficient facts or case law to support his fraud claim.

This Court disregards Garland's references to other statutes and legal theories throughout his complaint. Under Fed. R. Civ. P. 8(a), a claim for relief must contain a short and plain statement showing, (1) the grounds for the court's jurisdiction; (2) that the pleader is entitled to relief; and (3) a demand for the relief sought.  The other statutes and legal theories referenced by Garland are incoherent, unrelated to the foreclosure of his property, and do not state a claim for relief.

This Court need not address Wells Fargo's Motion for Summary Judgment because all claims against Wells Fargo have been dismissed.

## III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant Orlans' Motion to Dismiss (Doc # 4) is DISMISSED.

IT IS FURTHER ORDERED that Defendant Wells Fargo's Motion to Dismiss (Doc # 5) is DISMISSED.

IT IS ORDERED.


s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager